UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EZEKIEL RAMON REDUS,

       Petitioner,

                                  CASE NO. 18-cv-11864

v.

                                  HONORABLE ARTHUR J. TARNOW

MARK McCULLICK,

       Respondent.
_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**AND GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS***

    Petitioner Ezekiel Ramon Redus filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) The pleading challenges Petitioner's Wayne County, Michigan convictions for two counts of first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and one count of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. Petitioner claims that the trial court erred when it allowed the prosecution to introduce and publish photographs taken of the victims at the crime scene and during the autopsy. Petitioner also claims that the prosecution failed to establish that he premeditated the murders. (ECF No. 1, PageID.5, 7.)

Respondent Mark McCullick, through the Michigan Attorney General, filed an answer in opposition to the habeas petition. (ECF No. 9.) He urges the Court to deny Petitioner's claim about the gruesome photographs because the claim is not cognizable on habeas review, and it lacks merit. (*Id*. at PageID.64.) As for Petitioner's challenge to the sufficiency of the evidence, Respondent contends that the claim lacks merit and that the state appellate court's determination -- that the evidence supported Petitioner's convictions -- was objectively reasonable. (*Id*.) Because the Court agrees with Respondent's assessment of Petitioner's claims, the Court will deny the habeas petition.

## I.  Background

The charges against Petitioner arose from the fatal shooting of Matthew Cogborn and Tiara Thompson on April 5, 2014, in Detroit, Michigan. Petitioner was tried before a jury in Wayne County Circuit Court. The Michigan Court of Appeals accurately summarized the facts established at trial as follows:

> On the night of April 4, 2014, Joan Rushin drove defendant and Matthew Cogborn from Canton, Ohio to Detroit, Michigan. Defendant and Cogborn would periodically purchase cocaine in Detroit and drive to Canton to sell it. When they arrived in Detroit in the early morning hours of April 5, 2014, Rushin dropped defendant and Cogborn off at Cogborn's apartment, which was located at 4535 Cadieux, before driving back to Canton. When she arrived back in Canton, Rushin called and texted Cogborn to let him know she was home but received no response.
>
> Over the next two days, Rushin unsuccessfully attempted to reach Cogborn. Concerned, Rushin contacted Dejuan Kennedy, another

> friend who lived in Canton. Rushin and Kennedy drove back to Detroit on the night of April 6, 2014. When they arrived at 4535 Cadieux, Kennedy got out of the car and knocked on the front door. After no one answered, Rushin and Kennedy drove to several other homes, but were still unable to locate Cogborn. They returned to 4535 Cadieux where Kennedy eventually broke down the front door. As he entered the bathroom, Kennedy observed Cogborn on the bathroom floor, dead from a gunshot wound to the head. Kennedy walked back outside and told Rushin what he had seen. Rushin and Kennedy entered the apartment together and discovered Tiara Thompson, Cogborn's girlfriend, dead in the bedroom of the apartment. Thompson had been stabbed multiple times in her head and neck and strangled by a belt before being shot in the head.
>
> Hosea Palmore, defendant's brother, testified that he received several telephone calls from defendant in the early morning hours of April 5, 2014, where he asked to be picked up from 4535 Cadieux. Stan Brue, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that defendant's cellular telephone was in the area of 4535 Cadieux in the early morning hours of April 5, 2014.
>
> After Palmore picked up defendant, he drove him to a home at 7298 Greenview in Detroit. Defendant got out of Palmore's car and entered another car parked in front of the home. Shadeja Juners, defendant's girlfriend, was in the parked car. Defendant told Juners that something had come over him and that he had "killed them both." Juners observed defendant drop an item into the sewer, which she believed to be a gun. A later search of the sewer by police uncovered a .357 revolver. Defendant also subsequently confessed to Palmore that he committed the killings.

*People v. Redus*, No. 328133, 2016 WL 6127884, at *1 (Mich. Ct. App. Oct. 18, 2016).

The police discovered three live rounds and two casings without bullets in the five-shot revolver that the police found in the sewer by the Greenview address. *See* 11/25/14 Trial Tr. at 82-83 (ECF No. 10-8, PageID.505-506). A deformed bullet

3

was recovered from Cogburn's right cheek during the autopsy, *see id*. at 8, PageID.431, and an expert witness on firearms testified that the bullet was fired from the gun in evidence. *See id*. at 90-91, 97, PageID.513-514, 520. An analysis of cell phone data further supported the testimony of Rushin, Kennedy, and Palmore. *See id*. at 66-71, PageID.489-494.

There was additional evidence that Petitioner encouraged Juners and Palmore to lie about who drove him to his mother's house after the shooting. He told Juners that if the police questioned her, she should say that Cogborn and Thompson had dropped him off at the house on Greenview. *See* 11/24/14 Trial Tr. at 138-39 (ECF No. 10-7, PageID.408-409). And he instructed Palmore not to tell the police that Palmore had picked him up from Cogborn's apartment. *See* 11/25/14 Trial Tr. at 31 (ECF No. 10-8, PageID.454).

Petitioner did not testify or present any witnesses. His defense was that Juners' testimony was not credible because she changed her story and implicated him in the crimes after she was arrested and wanted to get out of jail. Defense counsel also pointed out to the jury that no one had noticed any blood or cuts on Petitioner after the shootings, that there was no DNA evidence linking him to the shooting, and that no witnesses testified about a motive for the crime. *See* 11/26/14 Trial Tr. at 16-25 (ECF No. 10-9, PageID.540-549).

4

The trial court instructed the jury on second-degree murder as a lesser-included offense of first-degree murder. The jury, however, found Petitioner guilty, as charged, of two counts of first-degree, premeditated murder and one count of felony-firearm. *See* 12/1/14 Trial Tr. (ECF No. 10-10, PageID.574.) On December 15, 2014, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by two concurrent terms of life imprisonment for the murder convictions. *See* 12/15/14 Sentencing Tr. at 7-8 (ECF No. 10-11, PageID.584-585).

Petitioner appealed his convictions through counsel, who argued that the prosecution introduced in evidence immaterial and prejudicial photographs of the victims. *See* Defendant-Appellant's Brief on Appeal (ECF No. 10-12, PageID.602-624). In a *pro se* supplemental brief, Petitioner argued that there was insufficient evidence to support his convictions for premeditated murder. *See* Appellant's Standard 4 Brief (ECF No. 10-12, PageID.648-659). The Michigan Court of Appeals adjudicated these claims on the merits and affirmed Petitioner's convictions. *See Redus*, 2016 WL 6127884.

Petitioner raised the same two claims in the Michigan Supreme Court. *See* Application for Leave to Appeal (ECF No. 10-13, PageID.682-704). On May 2, 2017, the Michigan Supreme Court denied leave to appeal because it was not

persuaded to review the questions presented to the court. *See People v. Redus*, 500 Mich. 983; 893 N.W.2d 342 (2017).

On June 12, 2018, Petitioner filed his habeas corpus petition. He raises the same two claims that he presented to the state courts on direct appeal. As noted above, Respondent urges the Court to deny the petition.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

### III. Discussion

#### A. The Admission of Photographs

Petitioner alleges first that the trial court abused its discretion and deprived him of his constitutional right to a fair trial when the court allowed the prosecution

7

to introduce and publish photographs of the victims taken at the scene of the crime and during the subsequent autopsies. Petitioner contends that the photographs were unnecessary, immaterial, and prejudicial. *See* Pet. at 5 (ECF No. 1, PageID.5).

In state court, Petitioner developed his claim more thoroughly by citing to federal law and arguing that the photographs of the decedents were not substantially necessary to prove a fact material to the case. He also claimed that the prosecution used the photographs to appeal to the jury's sympathy, that the photographs did nothing to clarify any disputed issues, and that the medical examiners' testimony was adequate to prove the victim's injuries and the cause of death. He concluded that the gruesome photographs could have tipped the scale against him and that the trial court's error in admitting the photographs was not harmless. *See* Defendant-Appellant's Brief on Appeal, (ECF No. 10-12, PageID.617-623). The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that the trial court did not abuse its discretion when it admitted the photographs.

Federal habeas courts usually do not question state-court rulings on the admission or exclusion of evidence under state law. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). In fact, a claim about the admission of gruesome photographs of a deceased victim is not cognizable in a habeas corpus proceeding. *Gerlaugh v. Stewart,* 129 F.3d 1027, 1032 (9th Cir. 1997). Such claims do "not present a question of constitutional magnitude." *Pearl v. Cason,* 219 F. Supp. 2d

820, 830 (E.D. Mich. 2002) (citing *Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh,* 129 F.3d at 1032)).

Petitioner argued in state court that the constitutional right to due process requires fundamental fairness in the use of evidence against a criminal defendant. *See* Defendant-Appellant's Brief on Appeal (ECF No. 10-12, PageID.618). However, "[t]he admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004). The evidence also does not justify collateral relief if the photographs were "cumulative and likely designed more to inflame the jury than to supply an essential underpinning of the prosecution's case." *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997) (citing *Gomez v. Ahitow*, 29 F.3d 1128, 1139-40 (7th Cir. 1994)).

Furthermore, "states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017). A trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered the proceeding fundamentally unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

The alleged error in this case did not render Petitioner's trial fundamentally unfair because there was substantial evidence of Petitioner's guilt apart from the photographs, and the photographs were not so gruesome as to tip the scale against

9

him. *See* Exhibits to Defendant-Appellant's Brief on Appeal (ECF No. 10-12, PageID.627-643). Moreover, as the Michigan Court of Appeals pointed out, the prosecution was required to prove premeditation even if Petitioner did not dispute that element at trial, and the photographs were evidence of Petitioner's premeditation. *See Redus*, 2016 WL 6127884, at *2. The jurors were entitled to view the severity and vastness of the injuries for themselves. *Id*.

To summarize, Petitioner's state evidentiary claim is not cognizable on habeas review, and his due process claim lacks merit because the alleged error did not deprive him of a fair trial. In addition, the state appellate court's adjudication of Petitioner's claim was objectively reasonable. The Court, therefore, declines to grant relief on Petitioner's first claim.

## B. Sufficiency of the Evidence

In his only other claim, Petitioner alleges that the evidence at trial was insufficient to support his murder convictions. He contends that the prosecution failed to establish the premeditation element of the crime. *See* Pet. at 7 (ECF No. 1, PageID.7). In state court, Petitioner argued that, even assuming he committed both homicides, the facts tended to show killings committed in the heat of passion, on the spur of the moment, or possibly following a disagreement between drug dealers, with no plan to kill. *See* Appellant's Standard 4 Brief at 3 (ECF No. 10-12, PageID.657). The Michigan Court of Appeals disagreed with Petitioner and

concluded from the evidence viewed in the light most favorable to the prosecution that the prosecution presented sufficient evidence of premeditation.

### 1. Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"[R]eview of a state-court conviction for sufficiency of the evidence is very limited" because federal habeas courts "give two layers of deference to state-court convictions." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam* opinion quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).

Second, on habeas review, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Renico v. Lett*, 559 U.S. 766, 733 (2010)); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. To establish first-degree, premeditated murder in Michigan, "the prosecution must prove that the defendant intentionally killed the victim and [that] the act of killing was deliberate and premeditated." *People v. Haywood*, 209 Mich. App. 217, 229; 530 N.W.2d 497, 503 (1995).

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329; 187 N.W.2d 434, 449 (1971) (internal and end footnotes omitted). "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *People v. Oros*, 502 Mich. 229, 242; 917 N.W.2d 559, 566 (2018).

In addition, "premeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident, including the parties' prior relationship, the actions of the accused both before and after the crime, and the circumstances of the killing itself[.]" *Haywood*, 209 Mich. App. at 229; 530 N.W.2d at 503 (internal and end citations omitted). The type of weapon used and the location of the wounds inflicted may also be considered, *People v. Berry*, 198 Mich. App. 123, 128; 497 N.W.2d 202, 204 (1993), and the amount of time for the defendant to take a "second look" at his actions may be minimal. *People v. Gonzalez*, 178 Mich. App. 526, 531; 444 N.W.2d 228, 230 (1989).

### 2. Application

At trial, defense counsel argued that the relevant question was not whether the crime was first-degree or second-degree murder, but whether Petitioner committed the crimes. *See* 11/26/14 Trial Tr. at 16 (ECF No. 10-9, PageID.540). There was substantial evidence, however, that Petitioner shot and killed both victims. The evidence, as summarized by the Michigan Court of Appeals, established that

> Rushin . . . dropped defendant and Cogborn at 4535 Cadieux in the early morning hours of April 5, 2014. After Rushin arrived back in Canton, she unsuccessfully attempted to call Cogborn several times. [Special Agent Stan] Brue's testimony established that the last active use of Cogborn's cellular phone was at 12:45 a.m. on April 5, 2014. Around this time, defendant made several telephone calls to Palmore to come pick him up from 4535 Cadieux. Brue's testimony established that these telephone calls were made in the area around 4535 Cadieux. When Palmore later picked up defendant from 4535 Cadieux, he drove him to 7298 Greenview to meet up with Juners. Juners testified that

>defendant confessed to her that something had come over him and that he had "killed them both." On July 26, 2014, Palmore asked defendant what happened the night he picked him up from 4535 Cadieux. Defendant responded that "it was either him or me."

*Redus*, 2016 WL 6127884, at *3 (alterations added).

Petitioner, nevertheless, maintains that there was insufficient evidence that he premeditated murders. The record before the Court suggests otherwise.

First, although there was no direct testimony that Petitioner had a motive for shooting Cogborn, Kennedy testified that Cogborn bought nice clothes and shoes for only himself shortly before Petitioner and Cogborn left Canton for Detroit. Kennedy thought that Petitioner had no money of his own at the time. *See* 11/24/14 Trial Tr. at 92-94 (ECF No. 10-7, PageID.362-364). Kennedy also testified that Cogborn was carrying about $9,300 to Detroit on the night in question. *See id.* at 95, PageID.365. The jury could have inferred from this evidence and other testimony about Petitioner's lack of a regular job and income that Petitioner resented Cogborn. The jury also could have inferred that Petitioner killed Cogborn to steal his money, and that he killed Thompson to eliminate an eyewitness to the murder of Cogborn.

Second, there was evidence that Petitioner began calling Palmore on the ride from Canton to Detroit to ask Palmore to pick him up in Detroit because Petitioner did not want to stay in the apartment on Cadieux that night. *See* 11/25/14 Trial Tr. at 23-26 (ECF No. 10-8, PageID.446-449). This evidence suggests that Petitioner

may have been planning to kill the victims and then leave the scene of the crime to avoid suspicion and detection.

Third, the testimony established that Petitioner had enough time to premediate and deliberate his actions. Kennedy testified that, less than a week before the shooting, he placed a revolver in a cabinet at the Cadieux apartment while Petitioner was standing next to him. *See* 11/24/14 Trial Tr. at 107-110 (ECF No. 10-7, PageID.377-380). And according to Juners, Petitioner said that he shot Cogborn in the bathroom of the apartment and then ran to another room and started to choke the girl. *See id*. at 134, PageID.404. The jury could have inferred from Kennedy and Juners' testimony that Petitioner had enough time to take a second look at his actions before killing Cogborn and Thompson.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner premeditated and deliberated the murders. Therefore, the evidence was sufficient to sustain the jury's verdict on the murder charges.

Even if the Court had concluded otherwise, the conclusion reached by the Michigan Court of Appeals was reasonable. Petitioner, therefore, has no right to relief on his claim about the sufficiency of the evidence at trial.

## IV. Conclusion

The state appellate court's adjudication of Petitioner's claims on the merits was not contrary to clearly established Supreme Court precedent, an unreasonable application of clearly established Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision also was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the Court denies the habeas corpus petition.

The Court also declines to issue a certificate of appealability, because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He also has not shown that reasonable jurists could disagree with the Court's resolution of his constitutional claims or could conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner, nevertheless, may proceed *in forma pauperis* on appeal if he appeals this decision, because he was granted permission to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

       s/Arthur J. Tarnow
       ARTHUR J. TARNOW
Dated: August 18, 2021       Senior United States District Judge